# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### September 28, 2004 Session

## BRIAN SHANE CALDWELL v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 43082    Richard Baumgartner, Judge**

---

**No. E2003-02122-CCA-MR3-PC - Filed November 10, 2004**

---

The Defendant, Brian Shane Caldwell, was convicted by a jury of first degree felony murder and first degree burglary. He was sentenced to concurrent terms of life imprisonment and ten years, respectively. The Defendant's convictions and sentences were affirmed on direct appeal. See State v. Brian Shane Caldwell, No. 1176, 1988 WL 94393 (Tenn. Crim. App., Knoxville, Sept. 13, 1988). The Defendant subsequently filed for post-conviction relief[1] alleging, inter alia, that he had received ineffective assistance of counsel at trial. After an evidentiary hearing, the trial court denied relief; this appeal followed. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JOHN EVERETT WILLIAMS, JJ., joined.

Richard W. Clark, III, Knoxville, Tennessee, for the appellant, Brian Shane Caldwell.

Paul G. Summers, Attorney General and Reporter; Seth P. Kestner, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Marsha Mitchell, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

A brief review of the facts adduced at the Defendant's trial will be helpful. See generally Caldwell, 1988 WL 94393. The Defendant rented an upstairs apartment from the victim, sixty-seven-year-old Lucille Gibson. Ms. Gibson lived in the lower rooms of the house in which the apartment was located. On the day the Defendant moved in, he had an argument with Ms. Gibson in which she accused him of having stolen some of her keys and some money. As a result of this

---

[1] The Defendant filed his petition for post-conviction relief on January 25, 1991. The hearing on the petition was held in October 2002.

argument, Ms. Gibson ordered the Defendant to vacate the apartment. The Defendant demanded his rent money be returned, but Ms. Gibson refused to do so.

Later that night, according to the State's proof, the Defendant returned to Ms. Gibson's residence with his girlfriend, Diana Adkins. According to Ms. Adkins, the Defendant intended to recover his rent money. After arriving at Ms. Gibson's residence, the Defendant and Ms. Adkins entered her room. The Defendant restrained Ms. Gibson and placed a nightcap in her throat. Ms. Gibson eventually suffocated. The Defendant ransacked Ms. Gibson's living quarters, taking a televison set, some hot rollers, and a curling iron. The Defendant and Ms. Adkins then left the scene.

Ms. Adkins' brother, John Adkins, also testified. He stated that the Defendant had admitted to him that he killed the victim.

Rhonda Knight testified on behalf of the defense that Ms. Adkins told her that she had placed the nightcap in the victim's mouth.

The State's case rested heavily on the testimony of Ms. Adkins, who was about sixteen years of age at the time of the murder. Although she was admittedly at the scene of the crimes, she was not charged with any criminal offense. Nevertheless, during its deliberations, the jury queried of the trial court whether it could find Ms. Adkins guilty of anything.

The State sought the death penalty against the Defendant for Ms. Gibson's murder. Accordingly, the Defendant was assigned two trial lawyers for his defense: Glen Rutherford and Raymond Shirley, Jr. Mr. Shirley stated that the defense team was convinced that Ms. Atkins had played an active role in the crimes against Ms. Gibson. However, they were never able to prove that the State declined to prosecute her in exchange for her testimony against the Defendant. The basic theory of defense was to force the State to meet its burden of proof: that the Defendant was present at the scene and participated in the crimes. As a corollary, the Defendant's lawyers intended to attack Ms. Adkins' credibility and demonstrate that she was the actual killer.

Mr. Shirley acknowledged that his fee request reflected that he had spent a total of 33.6 hours preparing for trial. He stated, however, that his fee requests frequently did not reflect all time actually spent preparing for a case. When queried about his opinion of the defense's performance, Mr. Shirley stated that the only thing he would have done differently would have been to call a particular witness that they had tried, unsuccessfully, to find. This witness, Barbara Slusher, would supposedly have testified that Ms. Adkins had told her that she had participated in killing the victim. Mr. Shirley stated further, however, that he did not think Ms. Slusher's testimony would have resulted in the Defendant's acquittal.

Glen Rutherford also testified. His fee request reflected that he had spent forty-five hours in trial preparation. Like Mr. Shirley, the only thing he would have done differently at trial would have been to call Ms. Slusher, had she been available. Mr. Rutherford admitted that he had

acknowledged the Defendant's presence at the crime scene during opening statements.[2] He also stated, however, that the Defendant had told them that he had been there.

In response to the Defendant's allegations that his lawyers had not prepared adequately for his trial, and further, that they threw away his defense by acknowledging in opening statement his presence at the scene of the crime, the trial court found as follows:

> [The Defendant] also claims ineffective assistance of counsel on behalf of his two trial counsel. While the [Defendant] did not testify as to any specific shortcomings, his post-conviction counsel did vigorously cross-examine them during the hearing. [The Defendant] complains that trial counsel's efforts to implicate Diana Adkins, the state's eyewitness, as the true culprit was misplaced. They claim that defense counsel should have taken a different trial tactic, specifically that Mr. Caldwell was not present at the crime scene. [The Defendant] was adamant that the only evidence of his presence at the scene was the testimony of Diana Adkins and trial counsel's opening statement indicating he was present. A review of the testimony at trial, however, also establishes that John Adkins testified as to an admission made to him by the [Defendant] that not only was the [Defendant] present, but was responsible for the death of Ms. Gibson. In addition, a review of the record supplies overwhelming circumstantial evidence that puts Mr. Caldwell at or near the scene of this crime at pertinent times. Further, Mr. Caldwell had acknowledged to his trial counsel that he was present at the scene, [and] attempts by them to [elicit] testimony to the contrary would have been unethical and inappropriate.
>
> . . .
>
> Trial counsel testified that their approach to this case was to establish that Diana Adkins was the truly responsible party for the death of Ms. Gibson. It is unquestioned that they vigorously cross-examined her and established inconsistencies in her prior statements. Indeed, the jury returned a note during deliberation asking if they could also find Ms. Adkins guilty of some transgression.
>
> This court is of the opinion that trial counsel in this case adequately prepared and presented a defense on behalf of Mr. Caldwell. We do not judge trial counsel's action in the cool reflection of 20/20 hindsight, but rather determine whether trial counsel is performing in an effective manner to the extent that one can rely on the outcome of the proceeding. In applying the standards of Strickland v. Washington, 466 U.S. 668 (1984), and Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975), this court is of the opinion that trial counsel did perform within the standards set forth in those decisions and their progeny. For the foregoing reasons, this court finds this petition to be without merit and DENIES post-conviction relief.

---

[2] During his opening statement, Mr. Rutherford claimed that Ms. Adkins had "goaded [the Defendant] into going back out to Ms. Gibson's house," thereby implicitly admitting that the Defendant had been with Ms. Adkins at the crime scene.

In this appeal, the Defendant contends that the trial court erred in denying post-conviction relief, arguing that the proof demonstrated that his lawyers' trial preparation was inadequate; that they had no clear defense strategy; and that counsel's reference in opening statements to the Defendant's presence at the scene was "deficient performance per se."

Both the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Both the United States Supreme Court and the Tennessee Supreme Court have recognized that the right to such representation includes the right to "reasonably effective" assistance, that is, within the range of competence demanded of attorneys in criminal cases. See Strickland v. Washington, 466 U.S. 668, 687 (1984); Burns, 6 S.W.3d at 461; Baxter, 523 S.W.2d at 936.

A lawyer's assistance to his or her client is ineffective if the lawyer's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. This overall standard is comprised of two components: deficient performance by the defendant's lawyer, and actual prejudice to the defense caused by the deficient performance. See id. at 687; Burns, 6 S.W.3d at 461. The Defendant in this case bears the burden of establishing both of these components by a preponderance of the evidence. See McGee v. State, 739 S.W.2d 789, 790 (Tenn. Crim. App. 1987).[3] The defendant's failure to prove either deficiency or prejudice is a sufficient basis upon which to deny relief on an ineffective assistance of counsel claim. See Burns, 6 S.W.3d at 461; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

In evaluating a lawyer's performance, the reviewing court uses an objective standard of "reasonableness." See Strickland, 466 U.S. at 688; Burns, 6 S.W.3d at 462. The reviewing court must be highly deferential to counsel's choices "and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462; see also Strickland, 466 U.S. at 689. The court should not use the benefit of hindsight to second-guess trial strategy or to criticize counsel's tactics, see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982), and counsel's alleged errors should be judged in light of all the facts and circumstances as of the time they were made, see Strickland, 466 U.S. at 690; Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

A trial court's determination of an ineffective assistance of counsel claim presents a mixed question of law and fact on appeal. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). This Court reviews the trial court's findings of fact with regard to the effectiveness of counsel under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise. See id. "However, a trial court's conclusions of law--

_____

[3]In 1995, Tennessee's Post-Conviction Procedure Act, Tennessee Code Annotated section 40-30-101 et seq., was amended to require the petitioner to prove his or her grounds for post-conviction relief by "clear and convincing" evidence. See Tenn. Code Ann. § 40-30-110(f).

such as whether counsel's performance was deficient or whether that deficiency was prejudicial--are reviewed under a purely <u>de</u> <u>novo</u> standard, with no presumption of correctness given to the trial court's conclusions." <u>Id.</u>

This case boiled down to whether the jury believed the State's eyewitness to the murder, Diana Atkins. The Defendant does not contend that his lawyers were ineffective in their attacks on her credibility. Rather, his chief complaint is that they bolstered her testimony by admitting during opening statement that he was present at the crime scene. We agree that, where the theory of defense is to force the State to carry its burden of proof, any admission of facts supporting an element of the crime during a defendant's opening statement may be unwise and potentially deficient representation. However, it is clear in this case that the jury accredited Ms. Atkins' testimony that the Defendant participated in killing the victim, thereby implicitly finding that the Defendant was present at the scene. We have no difficulty concluding that the jury would have reached this same result even if defense counsel had said nothing during opening statement other than, "You should not believe a word the State's witnesses say." Ms. Atkins' testimony was corroborated by other evidence, and the Defendant had no alibi. In short, while the Defendant's lawyer should not have admitted during opening statement the Defendant's presence at the scene of the crime, the Defendant has failed to demonstrate that he was prejudiced thereby. Accordingly, his claim of ineffective assistance of counsel on this ground is without merit.

With respect to trial preparation, the Defendant has offered no proof of how any additional time and/or investigation and/or meetings with the Defendant would have altered the verdict in his favor. At the post-conviction hearing, the Defendant put on no additional witnesses that should have been called at trial, but were not, nor did he produce any physical evidence that his lawyers should have introduced at trial, but did not. The Defendant basically contends that we should view his lawyers' trial preparation as inadequate based simply on the number of hours they spent. We decline to adopt, however, such a formulaic approach to determining the effectiveness of legal representation.

Similarly, we reject the Defendant's contention that his lawyers were ineffective because they lacked a "clear defense strategy." In some criminal cases, especially where the defendant has admitted to his lawyers his presence at the scene, the only strategy available is "the State cannot prove its case beyond a reasonable doubt." That was the strategy adopted in this case and defense counsel were so effective in impeaching Ms. Adkins that the jury wanted to convict her of some offense: in spite of the fact that she had never been charged with anything. The Defendant has failed to demonstrate what else his lawyers should have done to attack the State's case, and has therefore failed to establish that he was prejudiced by his lawyers' performance.

We agree with the trial court that the Defendant has failed to prove that he received the ineffective assistance of counsel at trial. Accordingly, we affirm the judgment of the trial court.

_____
DAVID H. WELLES, JUDGE